[No. 9973. Department One. August 19, 1912.]

THE STATE OF WASHINGTON, *on the Relation of Spokane,
Portland and Seattle Railway Company, Appellant*, v.
RAILROAD COMMISSION OF WASHINGTON *et al.,
Respondents.*[1]

RAILROADS—REGULATION—NAME OF STATIONS—RAILROAD COM-
MISSION. An order of the railroad commission requiring a railroad
to designate the name of a station in its tariffs, folders, and tickets
as Bingen and White Salmon is unreasonable, where it appears that
its station, in the village of Bingen of 100 inhabitants, is but one
and one-half miles from the business center of the town of White
Salmon, having a population of 800 or more, the latter being the
more appropriate name for the district, and the railroad company
having recently changed the name of its station from Bingen to
White Salmon in deference to the wishes of a majority of the pa-
trons of the station; since the naming of its stations will not be
interfered with in the absence of any public necessity therefor.

Appeal from a judgment of the superior court for Klicki-
tat county, McKinney, J., entered September 9, 1911, af-

[1]Reported in 125 Pac. 953.

firming an order of the railroad commission respecting the published list of railway stations. Reversed.

*Carey & Kerr* and *Charles A. Hart*, for appellant.
*W. V. Tanner* and *Stephen V. Carey*, for respondents.

PARKER, J.—This is an appeal from a decision of the superior court for Klickitat county, affirming an order of the state railroad commission which, so far as it requires our notice here, directs that appellant "show on all tariffs and folders the station of Bingen and that the name be shown, not by a star and foot note, but that it be shown among the list of stations, and that the name of 'Bingen and White Salmon' or 'White Salmon and Bingen' be bracketed and shown as the same station; that when tickets are sold to passengers desiring a ticket to Bingen, the ticket shall bear the name of Bingen thereon in connection with the name of White Salmon."

It is contended by counsel for appellant railway that this order is unreasonable, in the light of evidence produced before the commission upon which it is based; and in view of our conclusions upon that question, it will be unnecessary for us to discuss other contentions made by counsel.

The controlling facts as shown by the evidence introduced before the commission, may be summarized as follows: In July, 1908, appellant railroad company changed the name of its station on the line of its railway in Klickitat county, theretofore called Bingen, to White Salmon. This change was apparently made in compliance with the wishes of a large majority of the patrons of the railway company having business with it at that station. The station is situated upon the platted townsite of Bingen, not far from the business center of that town, where there is a post office of the same name. Bingen is not an incorporated town, but a mere village, and has only about 100 inhabitants. The name has no application except to the town or village itself. It is not suggestive of any surrounding country or valley, as is that

of White Salmon.  About a mile and a half from the station, is situated the business center of the town of White Salmon, which is an incorporated town of the fourth class, having a post office of the same name and a population of 800 or more. The name White Salmon has a well recognized application to a somewhat extensive scope of country lying in the valley of the White Salmon river, and tributary to the town of White Salmon.  This tributary valley and country has a population, together with the town of White Salmon, of from 3,500 to 4,000 people.  The country tributary to Bingen is very small, both in extent and population.  About ninety per cent of the business of the railway company at this station is with the people of the town of White Salmon and the White Salmon country; about sixty per cent of it being with the town of White Salmon, the other ten per cent being with the people of Bingen and its tributary territory.

It seems to us that argument is hardly necessary to show the appropriateness of the name of White Salmon for this station, though it may be conceded that Bingen is not an inappropriate name therefor.  The closer proximity of the station to the business center of Bingen than to that of White Salmon is the only argument worthy of notice in favor of the name of Bingen in preference to White Salmon.  When we consider the very short distance of the town of White Salmon from the station, the excess of the business of that town and its tributary territory with the railway company over that of Bingen, and the well recognized application of the name "White Salmon" to both the territory and town, the facts shown seem to argue much more in favor of the appropriateness of the name of White Salmon than that of Bingen.  Now it can not be seriously argued that the railway company has not the right to choose and use names for its stations without interference therewith by the commission, except it be in cases where a name so chosen and used materially detracts from the efficiency of the service which the railway company is required to furnish to the public.  We are quite unable to

see how the use of the name White Salmon for this station in any degree detracts from such required service. Indeed, the facts here shown convince us that the use of that name will tend to better, rather than lessen, the efficiency of the railway company's service to the public. But even if we were not of this opinion, we think the naming of the station by the railway company could not be interfered with by the commission unless there was shown a public necessity demanding a different name or a different designation than that adopted by the railway company. We are quite clear there is no such necessity shown in this case. It may be noted that this is a comparatively new railway line, and the name of Bingen was only applied to this station during the construction of the railway, and for a short time only after it began to do business as a public service corporation.

We are of the opinion that the order of the commission requiring the use of a name for this station other than White Salmon is unreasonable, and for that reason should be annulled. The orders of the commission and superior court are therefore reversed.

CROW, CHADWICK, FULLERTON, and GOSE, JJ., concur.